IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SHAWN K. ODNEAL | § | |
|     TDCJ-CID # 917382 | § | |
| v. | § | C.A. NO. C-04-454 |
| | § | |
| BILL PIERCE, ET AL. | § | |

## OPINION DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case is on remand from the Fifth Circuit, which vacated this Court's granting of summary judgment on plaintiff's claims brought under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, concerning the wearing of a kouplock and carrying a medicine bag. The issue before the Court is whether the grooming policy of the Texas Department of Criminal Justice ("TDCJ") violates plaintiff's right to exercise his religion under RLUIPA by prohibiting him from growing and wearing a kouplock.[1]

Defendants move for summary judgment arguing that there is no genuine issue of a material fact that the challenged TDCJ grooming policy prohibiting plaintiff from growing or wearing a kouplock furthers the TDCJ's compelling governmental interest in maintaining security, and in addition, is the least restrictive means of doing so in the prison context. (D.E. 155). Plaintiff has filed a response in opposition. (D.E. 156). For the reasons stated herein, defendants' summary judgment motion is DENIED as there is a genuine issue of a material fact as to whether the prohibiting of the kouplock is the least restrictive means to achieve the TDCJ's security goals.

---

[1] In his second amended complaint, (D.E. 137), and third amended complaint (D.E. 145), plaintiff abandoned his claim concerning his medicine pouch.

## I.  JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  After consent by the parties, (D.E. 55, 58), this action was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment.  (D.E. 59); see also 28 U.S.C. § 636(c).

## II.  PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the TDCJ, Correctional Institutions Division, and is confined at the McConnell Unit in Beeville, Texas.  He is a Native American and a member of the Choctow nation.

Plaintiff filed this lawsuit on August 30, 2004, claiming that certain TDCJ practices and rules effectively violated his religious rights pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments of the United States Constitution, and the RLUIPA.  Specifically, he claimed that defendants denied him the regular opportunity to attend Native American religious ceremonies because they failed to hire an adequate number of Native American chaplains or produce volunteers to conduct those ceremonies; denied him the ability to conduct those ceremonies himself with prison unit personnel present when outside volunteers were unavailable; denied him the ability to adequately practice his religion by prohibiting him from carrying a medicine bag at all times; and denied him the ability to practice his religion by prohibiting him from growing long hair, or in the alternative, from growing a kouplock.  (D.E. 1, 9).

On May 25, 2006, the Court granted summary judgment in favor of one of the defendants, Ron Teel.  (D.E. 95).  On June 21, 2006, summary judgment was granted in favor of

2

the remaining defendants, Richard Thaler, Bill Pierce and Robert Kibbe, and final judgment was entered dismissing plaintiff's claims. (D.E. 98, 99).

Plaintiff appealed challenging only the Court's dismissal of his RLUIPA claims and its denial of motions for joinder by other inmates. (D.E. 100). On April 3, 2009, the Fifth Circuit affirmed the dismissal of plaintiff's claims challenging the frequency of religious services and TDCJ's policy prohibiting plaintiff from conducting the ceremonies without a chaplain or outside volunteer present. Odneal v. Pierce, 324 F. App'x 297 (5th Cir. 2009) (per curiam) (unpublished). The Fifth Circuit remanded the case for further development of the record on the issues of the medicine bag and the growing of a kouplock under RLUIPA. Id. at 302. The Fifth Circuit specifically noted that, although plaintiff's claim to wear long hair is precluded by Diaz v. Collins, 114 F.3d 69, 73 (5th Cir. 1997), there was insufficient information in the record regarding the security issues raised if plaintiff were permitted to wear a kouplock. Odneal, 324 F. App'x at 301.

On remand, the Court appointed counsel to represent plaintiff. (D.E. 119). On December 30, 2009, plaintiff was granted leave to file his second amended complaint. (D.E. 137). In his motion for leave to file a second amended complaint, he indicated that he no longer is pursuing his claim regarding the carrying of a medicine bag. Id. at ¶ 1.

On January 26, 2010, plaintiff filed his third amended complaint. (D.E. 145). He is asserting claims only against Richard Thaler, Bill Pierce, and Robert Kibbe, and only in their official capacities. Id. at 1. He alleges that a basic tenet of Native American faith is that the hair is sacred and an extension of one's body, and that it cannot be cut except in mourning. Id. at ¶ 2.2. Pursuant to the TDCJ's grooming policy, inmates must cut their hair and it may be no

3

longer than the nape of the neck.  Id. at ¶ 2.3.  Inmates who refuse to cut their hair are punished.  Id. at ¶ 2.4.  Plaintiff claims that the grooming policy violates his right to practice his religion pursuant to the RLUIPA because it imposes a substantial burden on his ability to practice his faith, and the TDCJ cannot show that the grooming policy furthers a compelling governmental interest by the least restrictive means.  Id. at ¶¶ 3.7-3.9.

On May 21, 2010, defendants filed the instant motion for summary judgment.  (D.E. 155).  On June 11, 2010, plaintiff filed his response in opposition.  (D.E. 156, 157, 160-65).  Plaintiff is seeking injunctive relief that would allow him to grow and wear a kouplock without being punished.[2]

### III.  SUMMARY JUDGMENT EVIDENCE

Plaintiff entered the TDCJ in May 2000.  (D.E. 155, Ex. A) (Odneal Dep. at 13).  He was assigned to the McConnell Unit at that time, and has been in custody there throughout his incarceration.  Id.

When plaintiff first came to prison, he designated his religion as Christian.  Id. at 14.  He did not participate in the Christian services or activities that were offered.  Id.  He knew as a child that he had Native American ancestors.  Id. at 13.  In prison, he began learning about the spiritual path of the Native American people from offender Teddy Norris Davis, as well as other inmates.  Id. at 14-15.  The Native American Circle welcomed him and instructed him on the faith.  Id. at 15.  Plaintiff began to read about the faith as well as talk to people outside of prison.  Id.  He also wrote to Native American organizations.  Id. at 16.

---

[2] The Fifth Circuit has held that plaintiff is not entitled to compensatory damages pursuant to the RLUIPA.  See Sossamon v. Texas, 560 F.3d 316 (5th Cir. 2009).  In May 2010, the Supreme Court granted certiorari to consider whether states and state officials may be subject to suits for damages for RLUIPA violations.  Sossamon v. Texas, __ S. Ct. __, 2010 WL 2025142 (U.S. May 24, 2010) (No. 08-1438).

Plaintiff is a member of the Native American Church, which supports individual prisoners, prison circles, and in general, teaches and instructs others about the Native American spiritual path. Id. It is located throughout the country, but the main base is in Albuquerque, New Mexico. Id. Plaintiff is also a member of a descendant's circle in Corpus Christi, which teaches Native American spirituality, and ministers to both incarcerated individuals and to those not in prison as well. Id. Ron Teel, a former chaplain at the McConnell Unit, is in charge of the descendant's circle in Corpus Christi. Id. The descendant's circle is not affiliated with any one tribe. Id.

On March 14, 2001, plaintiff completed and signed a form to change his religion designation from Christianity to Native American. Id. at 18-19. Plaintiff's grandmother is one-quarter to one-half Choctaw. Id. To his knowledge, no one in his family, including himself, has a Bureau of Indian Affairs number. Id. at 20.

Plaintiff keeps "quite a bit" of religious items in his cell, including a prayer feather, honor feathers, a medicine bag, stones for personal ceremonies, and a few herbs. (D.E. 165) (Odneal Dep. at 21-22). The prison circle has not had a ceremony in over a year because there has been no facilitator, but plaintiff has personal ceremonies in his cell, at least once a month. Id. at 23-25.

On May 6, 2002, plaintiff filed a Step 1 grievance complaining that the TDCJ grooming policy violated his right to practice his religion. (D.E. 155, Ex. A) (Odneal Dep. at 26-29). He explained that, because the creator created his hair, it is part of his body, and by cutting his hair, he is mutilating his body. Id. at 28. If plaintiff were not in the TDCJ, he would never cut his hair. Id. He testified that the one exception to never cutting one's hair is for mourning. Id.

Because the hair is a valued gift from the creator, if someone close passes away, a Native American can cut his hair as an offering to show respect to the deceased. Id. at 29.

In a Step 2 grievance filed on July 21, 2004, plaintiff complained that the TDCJ's grooming standard was not the least restrictive means of furthering the TDCJ's interest in security because the TDCJ could allow an offender to grow and wear a kouplock, a 2-inch square section of hair at the base of the skull, that is continuously growing. Id. at 30-34. He testified that he would be willing to accept a patch of hair at the bottom of his skull and to keep the remainder of his hair in accordance with TDCJ regulations. Id. at 32, 34.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil

Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

## V.  DISCUSSION

Plaintiff challenges TDCJ's hair grooming policy as in violation of RLUIPA.  In relevant part, RLUIPA bars prisons from substantially burdening an inmate's religious exercise:

> (a) General rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general

>applicability, unless the government demonstrates that imposition of the burden on that person–
>
>>(1)  is in furtherance of a compelling governmental interest; and
>>
>>(2)  is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

Initially, it falls to the plaintiff to demonstrate that the government practice complained of imposes a "substantial burden" on his religious exercise. Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004). This requires the court to answer two questions: (1) is the burdened activity "religious exercise," and if so (2) is the burden "substantial"? Id. Once the plaintiff establishes this, the government bears the burden of persuasion that application of its substantially burdensome practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. Id.; 42 U.S.C. § 2000cc-2.

The Fifth Circuit has previously held that the TDCJ's grooming policy banning "long hair constituted the least restrictive means of furthering the TDCJ's compelling interest in preventing the transfer of weapons and contraband and ensuring that escaped inmates could not alter their appearances." Odneal, 324 F. App'x at 301 (citing Diaz, 114 F.3d at 73). However, in plaintiff's appeal, the Fifth Circuit specifically noted that its reasoning in Diaz concerning long hair was not dispositive of plaintiff's claim because "[o]n the limited record we do not know the dimensions of the kouplock Odneal requests permission to wear." Id. The Fifth Circuit continued that "[t]here may be distinctions, unexplored by the district court on the record, between the security risks presented by prisoners maintaining a full head of long hair and those wearing a small patch of long hair at the base of their skulls." Id.

Thus, for purposes of defendants' summary judgment motion, the burden is on plaintiff to establish only that TDCJ's policies "substantially burden" his ability to wear a kouplock. Although not defined by statute, the Fifth Circuit has held that a government regulation substantially burdens a "religious exercise" for the purposes of RLUIPA if it "truly pressures the adherent to significantly modify his religious beliefs." Adkins, 393 F.3d at 570. This "test requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a significant burden on an adherent's religious exercise." Id. at 571. In conducting this inquiry, courts are forbidden from asking whether the practice at issue is central to the adherent's religious-belief system. Id. at 570. This limitation, however, "does not relieve a complaining adherent of the burden of demonstrating the honesty and accuracy of his contention that the religious practice at issue is important to the free exercise of his religion." Id.

**A.    The Ban On Long Hair Substantially Burdens Plaintiff's Exercise Of Religion.**

Plaintiff argues that the TDCJ's hair grooming policy requiring that his hair be routinely cut with no portion extending beyond the nape of his neck places a substantial burden on his religious exercise as evidenced by the fact that, when he refuses to cut his hair, he is disciplined repeatedly and with progressively harsher punishment. Indeed, William Stephens, the Deputy Director of TDCJ, Correctional Institutions Division, testified that inmates who refuse to follow the institution's rules are disciplined by removal of various privileges, such as commissary and recreation; addition of duties; solitary confinement; cell restriction; loss of previously earned good time credits; lower classification adversely affecting the ability or rate to earn good time credits; and negative treatment during parole review. (D.E. 161, Ex. C) (Stephens Dep. at 149-56).

Defendants argue that plaintiff's concession to wear a kouplock actually undermines his stated belief that to cut the hair is sacrilegious because, if permitted to wear a kouplock, he will still have to cut his hair, the act that "mutilates the body." (D.E. 155 at 7-8). They also point out that members of the tribal council of the Choctaw Nation wear contemporary hairstyles. Id.

Defendants' argument is without merit. Indeed, the Fifth Circuit has held that the growing of hair is a Native American exercise and that the TDCJ grooming policy imposes a substantial burden on that exercise. Iron Thunderhorse v. Pierce, 364 F. App'x 141, 146 (5th Cir. 2010) (per curiam) (unpublished). In Thunderhorse, the Fifth Circuit noted that a RLUIPA challenge to the TDCJ's hair-length policy was foreclosed by its decision in Diaz, and in Longoria v. Dretke, 507 F.3d 898 (5th Cir. 2007); however, the court explained that "[i]n both cases, we found that the policy substantially burdened (or the plaintiff had sufficiently pleaded that the policy substantially burdened) a religious exercise." Thunderhorse, 364 F. App'x at 146 (citing Longoria, 507 F.3d at 903; Diaz, 114 F.3d at 72-73).

Here, the allegations are similar to those addressed in these Fifth Circuit decisions.[3] Thus, plaintiff has established that the TDCJ grooming policy substantially burdens his practice of his Native American faith because, if he refuses to cut his hair, he is punished.

**B.     There Is A Question Of Fact Whether TDCJ's Policy Serves A Compelling Interest And Is The Least Restrictive Means To Satisfy The Interest.**

Because plaintiff has established that the grooming policy substantially burdens his exercise of his religion, the burden is now on defendants to establish that prohibiting plaintiff

---

[3] For purposes of plaintiff's motion for injunctive relief, it had already been determined that plaintiff established the TDCJ policy substantially burdened his exercise of religion. See Odneal v. Pierce, No. C-04-454, 2009 WL 2982781, at *3 (S.D. Tex. Aug. 27, 2009) (unpublished).

from wearing a kouplock: (1) serves a compelling interest, and (2) is the least restrictive means of achieving that interest.

Defendants maintain that the grooming policy requiring inmates to maintain their hair no longer than the nape of their necks furthers the TDCJ's goal of providing security to those outside and within the prison. In support of their motion for summary judgment, they offer the deposition testimonies of Deputy Director Stephens and John Moriarty, TDCJ Inspector General, who each opine that a kouplock presents security and contraband problems. (D.E. 155, Exs. B & C).

Director Stephens testified that even a small patch of hair can provide a place for an offender to hide contraband. (D.E. 155, Ex. B) (Stephens Dep. at 27-28). He explained that cell phone SIM cards and money are usually hid on the person. Id.

John Moriarty has been the TDCJ Inspector General since May 2001. (D.E. 155, Ex. C.) (Moriarty Dep. at 6). The Office of Inspector General investigates all crimes that occur on prison property. Id. at 7. Mr. Moriarty did not have information as to why the grooming policy was enacted. Id. at 18. He testified his main concern regarding the wearing of a kouplock was for the safety of the inmate himself. Id. at 94-95. He explained that another inmate could seize the kouplock and control an inmate's head during an altercation, potentially causing greater injury. Id. In his opinion, a continuously growing kouplock would also amplify contraband concerns and create increased administrative demands on staff. Id. at 87-88.

In contrast to the above, plaintiff offers the testimony and expert report of George Sullivan. (D.E. 157) (Sullivan Expert Report). He testified that he has 55 years of experience in state and federal corrections, and for the past fifteen years he has worked as a consultant on

prison management and affairs. Id. at 1-8. He was Warden of the Oregon Correctional Institute from 1969 to 1984. Id. at 2-3. He then served as Warden of the penitentiary in New Mexico until 1987, and as a deputy Director in Charge of Statewide Prison Operations in Colorado until 1994. Id. at 3. While with the Oregon prison system, Sullivan implemented a Native American rights policy, including personal choice in hair length. Id. at 3-4. The Oregon State Penitentiary implemented the program and he had no incidents related to the program as of the time he left the Oregon system. Id. He established a similar Native American program in New Mexico prison system and in the Colorado system upon his affiliation with each. Id. at 4. In Colorado, he was actively involved with the Commission on Indian Affairs, implementing a state-wide Native American Religious Program in that state's prison system. Id. at 4-5.

      Mr. Sullivan's expert opinion is that inmates should be permitted to wear long hair. Id. at 13-15. He opined that the TDCJ's security rationale for its grooming policy is questionable, if not invalid, given that 42 states in the United States as well as the Federal Bureau of Prisons have permitted inmates to wear long hair, without disruptive problems associated with that accommodation. Id. at 13. He asserts that a kouplock will not hinder identification or enable the hiding of contraband. Id. at 15. Mr. Sullivan further testified:

> Through my personal experience, both as a Warden and as a Deputy Director in charge of 20 prisons, over a period of 25 years, I readily attest that inmates ... having long hair of personal choice length does not present any realistic, untoward security or prison operational problems. Staff time and other costs incurred in managing such programs are routinely absorbed within the prison operation. I have toured/audited 17 facilities of the U.S. Bureau of Prisons, all of which permit inmates to have beards and long hair, requiring only that they be kept clean and well groomed.
>
> State prison systems which I have toured/audited that also permit inmates to wear beards and long hair, requiring only that

>    they be kept clean and well groomed, have also been seen by me to
>    present no Correctional/Security problem....
>
>    Presentations made by TDCJ of possibilities of inmates
>    carrying contraband in their long hair ... are possibilities, of course,
>    but <u>not</u> probabilities: inmates have too many readily available
>    other ways to transport contraband.  I have never heard nor known
>    of transporting contraband in long hair ... as actually happening,
>    but such presentations seem to be convincing to non-corrections
>    people.  TDCJ's refusal to permit inmates to wear long hair ... has
>    <u>not</u> prevented their inmates from carrying contraband or fashioning
>    home made weapons, i.e., "shanks".

<u>Id.</u> at 16-17 (emphases in original).

When asked during the deposition about potential security issues related to the kouplock, if it were permitted to grow continuously, Mr. Sullivan testified the hair could be tied up.  (D.E. 164) (Sullivan Dep. at 170).  As to the problem of an inmate grabbing another male inmate by the kouplock, he opined that this event was not probable or even possible.  <u>Id.</u> at 171.  Instead, male inmates would punch each other in the face, as opposed to grabbing each other by the hair (which would be considered emasculating).  <u>Id.</u>

Mr. Sullivan also opined that a kouplock does not present a practical place to hide contraband: "inmates don't think in those terms, generally speaking.  If he's got contraband he's trying to carry or smuggle someplace, he's got more and more places to put it than he does tying it into his hair."  <u>Id.</u> at 172.  Contraband in a kouplock would be discovered if the officers are doing their jobs.  <u>Id.</u> at 173.  Moreover, if the officers and staff are doing their jobs, any inmate having a kouplock or ponytail should not create problems.  <u>Id.</u>  An officer required to check a kouplock at a checkpoint would not take longer during any security check.  <u>Id.</u> at 173-74.

Based on the conflicting opinions of the experts in this case, summary judgment is not proper as there are genuine issues of material fact.

## VI.  CONCLUSION

Based on the above, the Court finds that summary judgment is not proper because genuine issues of a material fact exist as to the issue of whether the TDCJ has a compelling security interest in prohibiting plaintiff from wearing a kouplock, and whether the prohibition of a kouplock is the least restrictive means.  Thus, defendants' motion for summary judgment (D.E. 155) is denied, and this case shall proceed to trial on plaintiff's RLUIPA claim concerning the wearing of a kouplock.  Trial dates and deadlines will be set forth in a separate scheduling order.

ORDERED this 20th day of August 2010.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE