IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SHAWN K. ODNEAL | § | |
| | § | |
| v. | § | C.A. NO. C-04-454 |
| | § | |
| BILL PIERCE, ET AL. | § | |

**OPINION DENYING PLAINTIFF'S MOTIONS FOR
ATTORNEY'S FEES AND COSTS, AND TO ALTER OR AMEND JUDGMENT**

Pending are Plaintiff's motions for attorney's fees and costs, (D.E. 200, 206), and his motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). (D.E. 207). Defendants have filed responses opposing the motions. (D.E. 202, 212). For the reasons that follow, Plaintiff's motions are all denied.

## I. JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. After consent by the parties, (D.E. 55, 58), the action was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 59); see also 28 U.S.C. § 636(c).

## II. BACKGROUND

Plaintiff filed this lawsuit on August 30, 2004, claiming that certain Texas Department of Criminal Justice ("TDCJ") practices and rules violated his religious rights pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified at 42 U.S.C. § 2000cc. (D.E. 1, 9). Specifically, he claimed that Defendants improperly denied him the regular opportunity to attend or conduct Native American religious ceremonies; improperly prohibited him from carrying a medicine bag at all times; and improperly forbade him from growing long hair, or in the alternative, from growing a kouplock, a smaller patch of hair that grows uncut

while the rest of the hair is kept short.  Id.

On May 25, 2006, upon the joint motion of both parties, (D.E. 85, 92), summary judgment was granted in favor of Defendant Ron Teel and final judgment was entered.  (D.E. 95, 96).  On June 21, 2006, summary judgment was granted in favor of the remaining Defendants, Richard Thaler, Bill Pierce and Robert Kibbe, and final judgment was entered dismissing Plaintiff's claims.  Odneal v. Dretke, 435 F. Supp. 2d 608 (S.D. Tex. 2006).

Plaintiff appealed, challenging only the Court's dismissal of his RLUIPA claims and the denial of motions for joinder by other inmates.  (D.E. 100).  On April 3, 2009, the Fifth Circuit affirmed the dismissal of Plaintiff's claims challenging the frequency of religious services and TDCJ's policy prohibiting him from conducting ceremonies.  Odneal v. Pierce, 324 F. App'x 297 (5th Cir. 2009) (per curiam) (unpublished).  However, the court remanded the case for further development of the record on the issues of the medicine bag and the kouplock.  Id. at 302.

On May 11, 2009, Audrey Mullert Vicknair was appointed to represent Plaintiff.  (D.E. 119).  Additionally, David Stith was appointed to assist her on December 7, 2009.  (D.E. 135).

On May 21, 2010, Defendants' filed a motion for summary judgment, (D.E. 155), which was denied on August 20, 2010.  Odneal v. Pierce, No. C-04-454, 2010 WL 3359535 (S.D. Tex. Aug. 20, 2010) (unpublished).  At an October 13, 2010 hearing, Plaintiff's counsel confirmed that her client was pursuing only injunctive relief.

On December 13, 2010, a two-day bench trial began.  While Plaintiff was testifying, the Court asked him whether he had "pursued a transfer to another state system where [he] would be permitted to grow [his] hair."  (D.E. 186, at 22).  Plaintiff responded that he had not, but that if such an option were offered he would "definitely do that in a heartbeat."  Id.  He added that he would

happily accept a transfer to "any place where [he] would be allowed to ... follow [his] faith," no matter how far from his family in Texas. Id.

On May 16, 2011, while the Court was awaiting post-trial briefs from the parties, TDCJ transferred Plaintiff to the Minnesota state prison system pursuant to the Interstate Correctional Compact. (D.E. 193). Defendants moved for the action to be dismissed as moot on May 20, 2011, (D.E. 194), and on May 25, 2011 it was. (D.E. 195, 196). On June 3, 2011, Plaintiff filed a motion for attorney's fees and costs. (D.E. 200). Defendants filed a response on June 6, 2011. (D.E. 202). On June 13, 2011, Plaintiff filed a reply to the response, (D.E. 208), and a motion to alter or amend judgment. (D.E. 207). Defendants filed a response to the motion to alter or amend judgment on June 27, 2011. (D.E. 212).

### III.  DISCUSSION

**A.     The Legal Standard Governing Motions For Attorney's Fees And Costs.**

The Supreme Court recently reiterated that the American "legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses," but that "Congress has authorized courts to deviate from this background rule in certain types of cases by shifting fees from one party to another." Fox v. Vice, __ U.S. __, 131 S. Ct. 2205, 2213 (2011) (citations omitted). Congress has mandated that "[i]n any action or proceeding to enforce a provision of ... [RLUIPA] ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A litigant should be considered a prevailing party entitled to attorney's fees when he "has obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." El Paso Indep. Sch. Dist. v. Richard R., 591 F.3d 417, 422 (5th Cir. 2009) (citing Buckhannon Bd. & Care Home, Inc. v.

3

W.V. Dep't of Health & Human Res., 532 U.S. 598, 603-04 (2001)), cert. denied sub nom. R.R. ex rel. E.R. v. El Paso Indep. Sch. Dist., __ U.S. __, 130 S. Ct. 3467 (2010).

Regarding the payment of costs, the Federal Rules of Civil Procedure provide that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  Additionally, Congress has mandated that "[a] judge or clerk of any court of the United States may tax as costs" fees for printing, copying, the payment of court-appointed experts, and various other expenses related to litigation.  28 U.S.C. § 1920.  Finally, Local Rule 54.2 stipulates that "[a]n application for costs shall be made by filing a bill of costs within 14 days of the entry of a final judgment."  In determining whether costs should be allowed, the "prevailing party" bears the same meaning as it does in the attorney's fees context.  See Hirczy de Mino v. Achenbaum, 81 F. App'x 819, 821 (5th Cir. 2003) (per curiam) (unpublished) (citing Buckhannon in adjudicating Rule 54(d)(1) motion); accord Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1035 (8th Cir. 2006) (citing cases from Second and D.C. Circuits).

**B.     Plaintiff's Motion For Attorney's Fees Is Denied.**

Defendants characterize Plaintiff's motion as brought pursuant to the "catalyst theory" of attorney's fees, and submit that the Supreme Court has disavowed that theory.  (D.E. 202, at 1) (citing Buckhannon, 532 U.S. 598).  According to Buckhannon, Defendants urge, Plaintiff cannot be regarded as a prevailing party because the relief he obtained came without any judicially endorsed order, and consequently there has been no "legally sanctioned change in the relationship of the parties."  Id.  Plaintiff argues to the contrary that he is relying on the "material alteration theory" of attorney's fees, which he defines in the following terms: "when the resolution of the dispute results

4

in a material alteration of the legal relationship between the plaintiff and defendant, such that the actual relief sought is obtained, the form of the award is not important. The point is that the relief sought was obtained." (D.E. 208, at 2) (citing Myers v. Central Fla. Invs. Inc., 592 F.3d 1201, 1225 (11th Cir.), cert. denied, __ U.S. __, 131 S. Ct. 392 (2010)).

Plaintiff's reply to the response essentially submits three arguments for the propriety of attorney's fees: 1) that Buckhannon was wrongly decided, 2) that Buckhannon does not control this case, and 3) that Plaintiff fits the definition of prevailing party as elucidated in Buckhannon. These three theories are treated, and repudiated, in turn.

### 1. Plaintiff's attack on the correctness of Buckhannon is irrelevant.

Plaintiff suggests that Buckhannon "has been greatly criticized," quotes Justice Ginsberg's "searing dissent," and argues, without citations, that "[q]uite a few cases thereafter criticized Buckhannon." (D.E. 208, at 2). This argument has no bearing on the dispute at issue. Federal courts are bound by majority, not minority, opinions, and neither Plaintiff's views on the propriety of Buckhannon nor the opinion of a dissenting Justice represent binding precedent. Furthermore, Plaintiff's vague reference to "quite a few cases" critiquing Buckhannon would only be germane to his motion if he meant that the Supreme Court has cast itself doubt on the decision's continuing validity. Though the Supreme Court has indicated that Buckhannon does not extend to all statutory contexts, see Hardt v. Reliance Standard Life Ins. Co., __ U.S. __, 130 S. Ct. 2149, 2156 (2010), there is no reason to believe its holding has been disturbed. Indeed, Hardt ruled that Buckhannon did not apply to Employment Retirement Income Security Act claims because the Act does not require the recipient of attorney's fees to be the "prevailing party," not because Buckhannon's characterization of that term was flawed. Id. at 2157. Thus, if anything, the Supreme Court's

5

subsequent reflections on Buckhannon only reinforce the decision's ongoing vitality.[1] Plaintiff does not suggest that he need not qualify as the prevailing party in order to deserve attorney's fees, and the attack on the wisdom of Buckhannon is therefore rejected.

### 2. **Buckhannon controls the disposition of the pending motion.**

Plaintiff finds Buckhannon "distinguishable" from the case at hand, arguing that the Supreme Court was there considering the catalyst theory, not the material alteration theory, and that it dealt with different facts, as well as different statutes. (D.E. 208, at 2-3). He concludes that "Plaintiff shares no similarity to Buckhannon." Id. at 3. Plaintiff is mistaken.

In Buckhannon, the Supreme Court began by explaining that

> Numerous federal statutes allow courts to award attorney's fees and costs to the 'prevailing party.' The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.

532 U.S. at 600. Later in the opinion, the Court listed some of these "numerous statutes," specifically citing 42 U.S.C. § 1988. Id. at 602-03. Moreover, the Buckhannon Court discussed cases dealing with § 1988, and the legislative history of that statute, as part of its prefatory description of the evolution of attorney's fees. Id. at 603-04 (citations omitted). Finally, in the concluding paragraph of Buckhannon, the Court cited "the clear meaning of 'prevailing party' in the fee-shifting statutes." Id. at 610 (emphasis added).

In light of the broad sweep of Buckhannon, and its situating of § 1988 squarely within the

---

[1] Plaintiff also remarks that "certain legislation has ... been enacted superseding Buckhannon," mentioning the Freedom of Information Act. (D.E. 208, at 2). He does not argue that any legislation has been enacted to supersede Buckhannon with respect to the statutes involved in this action, however, so this argument too is irrelevant.

affected scope of attorney's fees provisions, Plaintiff's assertion that the case is distinguishable from his own cannot be sustained. Indeed, several courts, including the Fifth Circuit, have implicitly subscribed to the same reasoning in applying Buckhannon within the RLUIPA context. See Bethany v. Reescano, No. 10-40021, 2011 WL 990306, at *2 (5th Cir. Mar. 22, 2011) (per curiam) (unpublished) (dealing with civil rights claims filed by a prisoner pursuant to both § 1983 and RLUIPA); DiLaura v. Twp. of Ann Arbor, 471 F.3d 666, 670-71 (6th Cir. 2006); Northern Cheyenne Tribe v. Jackson, 433 F.3d 1083, 1083-87 (8th Cir. 2006).

In sum, Plaintiff's emphasis on the differences in facts, statutes, and legal arguments between Buckhannon and this case, whether accurate or not, is misplaced. Buckhannon was an authoritative statement on the propriety of attorney's fees by the highest court, it remains good law, and it is plainly applicable to the instant action.

### 3. Plaintiff is not a prevailing party as defined by Buckhannon.

In what seems to be a form of argument in the alternative, Plaintiff argues that he passes muster according to the Buckhannon test. Specifically, he acknowledges that the decision demands "a judicial recognition of a changed relationship between the parties," but suggests that such recognition is present here in the form of the order dismissing the claim as moot. (D.E. 208, at 4). As part of this argument, Plaintiff highlights the purported fact that he is proceeding upon the "material alteration theory," not the catalyst theory, and that only the latter is forbidden by Buckhannon. (D.E. 208, at 2).

Preliminarily, the distinction, even if true, is of limited relevance at best. Whatever theory he cites, and whatever theory Buckhannon cited, the Supreme Court's definition of prevailing party remains binding law. In any event, though, Plaintiff's argument that he is advancing a material

alteration theory is unconvincing. "Material alteration" is not a theory to be contrasted with the catalyst doctrine. It is, instead, a fundamental requirement of <u>all</u> applicants for attorney's fees. See <u>Buckhannon</u>, 532 U.S. at 604 ("enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees.") (citation omitted).

Even more damaging to Plaintiff's motion, his argument for the propriety of attorney's fees does in fact fall squarely within the doctrine known as the "catalyst theory." In <u>Buckhannon</u>, the Supreme Court characterized that theory as one "which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." <u>Id.</u> at 601. Such a characterization describes Plaintiff's position perfectly, and it is difficult to understand his insistence to the contrary as anything other than semantics. Indeed, the language used by the Supreme Court in rejecting the catalyst theory further bolsters the conclusion that the pending motion draws from that theory: "the 'catalyst theory' ... allows an award where there is no judicially sanctioned change in the legal relationship of the parties." <u>Id.</u> at 605. Whatever label Plaintiff chooses to adopt for his theory, its substance has been considered and rejected. See <u>LULAC of Texas v. Texas Democratic Party</u>, No. 10-50399, 2011 WL 2420004, at *3 (5th Cir. June 16, 2011) (per curiam) (unpublished) (according to catalyst theory, "'plaintiffs were considered prevailing parties even if their cases settled or became moot, so long as the lawsuit itself was a substantial factor or significant catalyst that caused the defendants to voluntarily change their behavior to the result plaintiffs desired.'") (quoting <u>Bailey v. Mississippi</u>, 407 F.3d 684, 687 (5th Cir. 2005)).

The only real reason Plaintiff puts forward to consider him the prevailing party within the

meaning of Buckhannon is that the dismissal order represented the "judicial recognition" required by the decision. Though admirably creative, this argument is meritless. Buckhannon itself dealt with a claim that was mooted. 532 U.S. at 601. The Court there paused to discount the plaintiff's fear that a negative result would fail "to prevent defendants from unilaterally mooting an action before judgment in an effort to avoid an award of attorney's fees," determining that such an argument was "entirely speculative and unsupported by any empirical evidence." Id. at 608. It is clear, therefore, that Buckhannon does not allow a court to regard a dismissal for mootness as a judicial recognition of a changed legal status. Indeed, such a result would essentially render the holding of Buckhannon meaningless.

In a similar vein, Plaintiff's assertion that the "Court's dismissal order expressly recognizes and acts upon the Defendants' advisory that they were granting the request of the Plaintiff," (D.E. 208, at 4), blurs the significance and basis of the order. It is true that the order "recognized" the parties' agreement that Plaintiff's transfer supplied him the relief he sought in his complaint, (D.E. 195, at 1), but that does not mean that the order "acted upon" that fact. (D.E. 208, at 4). The action was not dismissed as moot because Plaintiff obtained the relief he sought. Instead, it was dismissed as moot because he had no standing to pursue injunctive relief from a prison system that no longer housed him. See Cooper v. Sheriff, Lubbock Cnty., Tex., 929 F.2d 1078, 1084 (5th Cir. 1991) (per curiam) (ordinarily, a prisoner's transfer renders moot any claims for injunctive relief regarding his previous institution) (citation omitted); Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (exceptions to this rule are made only when the inmate "show[s] either a 'demonstrated probability' or a 'reasonable expectation' that he would be transferred back to [the original institution] or released and reincarcerated there") (citing Murphy v. Hunt, 455 U.S. 478, 482 (1982) (per curiam)).

The order did not explain this, because it was not necessary and obvious. In light of clear precedent, however, its silence may not now be interpreted as an acknowledgment of the merits of Plaintiff's action, which is essentially what he seeks. See Buckhannon, 532 U.S. at 606 ("We cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief.") (citation omitted).

Given the clarity of the law, it is not surprising that courts continue to deny attorney's fees in civil actions after claims have been dismissed for mootness, even when the mootness stems from defendants voluntarily providing some measure of the relief sought. See, e.g., Jackson, 433 F.3d at 1083-87. Plaintiff presents only one case to support his alternative understanding of attorney's fees. He cites that case, Myers, 592 F.3d at 1225, for the proposition that "[u]nder the material alteration theory, when the resolution of the dispute results in a material alteration of the legal relationship between the plaintiff and defendant, such that the actual relief sought is obtained, the form of the award is not important. The point is that the relief sought was obtained." (D.E. 208, at 2). Plaintiff cites Myers not for its holding (attorney's fees were denied), but for its general language on the subject. In particular, he appears drawn to the Eleventh Circuit's dicta that "'a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" Myers, 592 F.3d at 1225 (quoting Farrar v. Hobby, 506 U.S. 103, 110 (1992)). Additionally, the Myers court quoted the Fifth Circuit for the admonition that "[t]he proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought." Id. at 1225-26 (quoting Taylor v. Sterrett, 640 F.2d 663, 669 (5th Cir. 1981)).

Surprisingly, in Myers, the Eleventh Circuit examined the meaning of "prevailing party" for purposes of attorney's fees without mentioning Buckhannon, the most recent Supreme Court case to squarely address the question. When that decision is examined, it becomes difficult to imagine that the sentence excerpted from Taylor reflects the current status of the law. Surely "the proper focus" in an attorney's fees inquiry is no longer on the sheer fact vel non of whether the litigant "has acquired the primary relief sought" after Buckhannon. At the very least, § 1988 now requires the analysis to focus on whether the plaintiff has acquired the primary relief sought as a result of judicial action. See LULAC, 2011 WL 2420004, at *3 ("In the light of *Buckhannon*, our court has held that, for prevailing-party status: plaintiff must obtain judicially-sanctioned relief....") (emphasis added) (citing Dearmore v. City of Garland, 519 F.3d 517, 521 (5th Cir. 2008)). No decision has cited Myers for its attorney's fees language, let alone one from the Fifth Circuit. More importantly, the Fifth Circuit has not repeated the "proper focus" phraseology from Taylor since the issuance of Buckhannon. On the contrary, the court, following Buckhannon, requires a prevailing party to show that he "has obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." Richard R., 591 F.3d at 422 (citing Buckhannon, 532 U.S. at 603-04).

Some district courts do continue to reference the "central issue" line from Taylor, but they do so for unrelated reasons. Indeed, they appear to recite the language exclusively in the context of motions for attorney's fees filed where the plaintiff has indisputably received favorable judicial resolution on some claims, and not on others. See, e.g., Richardson Independent School Dist. v. Michael Z., 561 F. Supp. 2d 610, 630 (N.D. Tex. 2008), vacated for other reasons by 580 F.3d 286 (5th Cir. 2009); Hardy v. City of Tupelo, Miss., No. 1:08-CV-28, 2010 WL 730314, at *9 (N.D. Miss. Feb. 25, 2010) (unpublished) (citations omitted); Abner v. Kansas City S. Ry., No. 03-765,

2007 WL 1805782, at *5 (W.D. La. June 21, 2007) (unpublished) (citations omitted), aff'd, 541 F.3d 372 (5th Cir. 2008); Thomas v. City of Tacoma, No. C01-5138, 2005 WL 2254005, at *3 n.2 (W.D. Wash. Sept. 16, 2005) (unpublished) (citations omitted). Such circumstances are far different from the one here, where the question is whether Plaintiff has been given judicial satisfaction on any claim. Thus, the primary focus for purposes of weighing different claims may remain on whether a plaintiff "acquired the primary relief sought," but the primary focus for purposes of determining whether a plaintiff has received relief through the proper channels so as to justify attorney's fees has shifted to whether the relief came from a court-order of some kind. Here, it did not.

Finally, Plaintiff points to various aspects of the proceedings that supposedly demonstrate the favorable nature of the outcome, i.e., "(a) two years of litigation, (b) favorable findings on an Application for Temporary Injunction that served to shift the burden of proof to the defense at trial, (c) the successful defense against a motion for summary judgment, (d) a trial that strongly weighed against the Defendants, and (e) a transfer to a jurisdiction that allows the religious freedoms and thus the relief requested." (D.E. 208, at 3). Accepting arguendo the truth of these claims (Plaintiff actually litigated this action for more than seven years, the first five pro se), they do not indicate that attorney's fees are warranted. Only two of the cited facts involved a decision by the Court (the ruling on the temporary injunction and the motion for summary judgment), as required by Buckhannon. The denial of Defendants' motion for summary judgment clearly did not constitute "a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." Richard R., 591 F.3d at 422 (citing Buckhannon, 532 U.S. at 603-04). That ruling established only Plaintiff's right to a trial on the merits, which is by definition not a "judgment on the merits." See Palmetto Props., Inc. v. Cnty. of DuPage, 375 F.3d 542, 551 (7th Cir. 2004) (suggesting that winning

at summary judgment only justified attorney's fees because it created judicially enforceable rights); Thomas v. Nat'l Science Found., 330 F.3d 486, 493-94 (D.C. Cir. 2003) (granting of "partial summary judgment did not afford appellees any concrete relief, beyond this mere legal declaration" and thus did not make attorney's fees appropriate).

The question of whether the granting of a motion for temporary injunctive relief justifies attorney's fees can, under some circumstances, present a closer question. See Dearmore, 519 F.3d at 524 (a plaintiff may qualify as a prevailing party for purposes of attorney's fees if he 1) wins a preliminary injunction, 2) based on an unambiguous indication of probable success on the merits, that 3) causes the defendant to moot the action). Such circumstances are not here present. For Plaintiff was never granted a preliminary injunction. He was, on the contrary, denied one. (D.E. 128). As he suggests, the ruling on the motion for summary judgment did contain "favorable findings," namely that he bore a substantial likelihood of success on the merits and that he established a substantial threat of irreparable injury if the injunction were denied. Id. at 3-7. But it also contained several unfavorable findings, i.e., that he failed to establish that the threatened injury outweighed the harm the injunction would cause Defendants, and that he failed to demonstrate that the injunction would not harm the public interest. Id. at 7-10. The latter two factors ultimately carried the day, and the injunction was denied. Id. Thus, Plaintiff fails to clear the first hurdle set by Dearmore, that an injunction be granted, and the ruling does not justify attorney's fees.

In the final analysis, the application of Buckhannon to the case at bar does not present a close question. That decision requires a "judicial imprimatur" on the relief sought; Plaintiff has not, by any reasonable understanding of the term, obtained it, and his representatives are therefore not entitled to attorney's fees. LULAC, 2011 WL 2420004, at *3.

**C.     Plaintiff's Motion For Costs Is Denied.**

Plaintiff moves for costs pursuant to Rule 54 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1920, and Local Rule 54.2. (D.E. 200). Costs are only available to the prevailing party, see Fed. R. Civ. P. 54(d)(1), and the term bears the same definition in this context as in the attorney's fees context. See Hirczy, 81 F. App'x at 821; accord FECO, 469 F.3d at 1035. Thus, for the same reasons that Plaintiff's representatives are not entitled to attorney's fees, they are not entitled to costs. See Howard v. Weston, 354 F. App'x 75, 78 (5th Cir. 2009) (per curiam) (unpublished). Accordingly, Plaintiff's motion for costs is denied.[2]

**D.     Plaintiff's Motion To Alter Or Amend Judgment Is Denied.**

Plaintiff moves to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, seeking a ruling that Plaintiff is the prevailing party and an amended judgment awarding costs and attorney's fees. (D.E. 207). Defendants oppose the motion. (D.E. 212).

Rule 59(e) motions "serve the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'" Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989) (citations omitted); accord Kossie v. Crain, 602 F. Supp. 2d 786, 793 (S.D. Tex.

---

[2] The denial of this motion for costs does not preclude Plaintiff from seeking costs pursuant to the Court's Pro Bono Plan. Indeed, he has submitted a request to the Clerk's office pursuant to this plan for $6,220.39, including expert fees and deposition costs. (D.E. 211-1). This amount exceeds the limit of $3,500 for such reimbursements. Id. Moreover, Plaintiff previously explained that his expert fees and deposition costs were already recouped in another RLUIPA action:

> Counsel for Plaintiff just learned today, June 9, 2011, that in *Garner v. Gutierrez*, 2:06-cv-0218, counsel for Garner filed a Bill of Costs – for expenses and attorneys fees – following the entry of judgment in favor of Plaintiff Garner. That Cost Bill was accepted and approved by the Court. Counsel for Garner has advised counsel for Odneal that all expenses for the TDC officials' depositions, and for George Sullivan's deposition, are included in the *Garner* Bill of Costs. Therefore, Odneal no longer needs [to] request those costs.

(D.E. 204, at 2). Thus, presumably Plaintiff would only need to request costs for long-distance telephone calls and legal research. (D.E. 211-1).

2009) (citation omitted).  Rule 59(e) cannot be used to introduce evidence that was available prior to the entry of judgment, nor should it be employed to relitigate old issues, advance new theories, or secure a rehearing on the merits.  Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004) (citation omitted); accord Kossie, 602 F. Supp. 2d at 793 (citation omitted).

Plaintiff's motion to alter or amend is a reiteration of his motion for attorney's fees and costs.  For the same reasons that he cannot be considered the prevailing party, therefore, the motion is denied.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for attorney's fees, (D.E. 200), is DENIED, as are his motions for costs, (D.E. 206), and to alter or amend the judgment.  (D.E. 207).

ORDERED this 7th day of July 2011.

                                                  BRIAN  L. OWSLEY
                                                  UNITED STATES MAGISTRATE JUDGE